IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| SATELLITE TRACKING OF PEOPLE LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> G4S PLC, G4S JUSTICE SERVICES (CANADA) ) <br> INC., STRATEGIC TECHNOLOGIES, INC., ) <br> G4S EM INTERNATIONAL LIMITED, ) <br> ) <br> Defendants. ) <br> _____) | Case No. _____ |

## COMPLAINT

Plaintiff Satellite Tracking of People LLC ("STOP" or "Plaintiff"), by and through its undersigned counsel, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, and Gibbons P.C., files the following Complaint against defendants G4S plc ("G4S"), G4S Justice Services (Canada) Inc. ("Justice Services (Canada)"), Strategic Technologies, Inc. ("STI") and G4S EM International Limited f/k/a On Guard Plus Limited ("OGPL") (collectively, "Defendants") and avers as follows:

## PRELIMINARY STATEMENT

The subject matter of this complaint goes to the core, and possibly the survival, of STOP's business -- the manufacture and sale of an advantageous "one-piece" electronic monitoring device for criminal offenders.

STOP was the first to market a one-piece monitoring device in the United States. The one-piece device is competitively distinct from older "two-piece" monitoring devices. In 2005, STOP licensed to STI and OGPL certain of its technology rights to one-piece monitoring

647696

devices outside the United States, while STI and OGPL agreed that they would not compete against STOP with one-piece devices inside the United States.

In 2006, defendant G4S was an electronic monitoring competitor with an outdated "two-piece" device, but since that time, G4S appears to have acquired from STI and OGPL, the license agreement and assets relating to STOP's one-piece device. Initially, STOP regarded G4S as having stepped into the shoes of STI and OGPL. STOP went so far as to supply its one-piece products to G4S so that G4S could sell them outside the United States in accordance with the agreements that STOP entered into with STI and OGPL. But more recently, STOP learned that G4S has joined with a different supplier of one-piece devices and, in violation of the license agreement, is competing against STOP in the United States with those other devices.

G4S has taken advantage of STOP's good faith and it is undermining the very foundation of STOP's business.

## NATURE OF THE ACTION

1. This is an action for breach of contract, unjust enrichment, tortious interference, breach of the covenant of good faith and fair dealing, fraud in the inducement, and civil conspiracy.

2. This action arises out of two related agreements that STOP, OGPL and STI entered on August 5, 2005. STI owned all of the shares of OGPL at the time of the agreements.

3. Under the agreements, STOP purchased the rights of OGPL and STI to a technology called "BluTag," and at the same time, licensed back to OGPL and STI a license to use that one-piece BluTag technology in certain areas outside the United States.

4. Under the agreements, OGPL and STI promised that for ten years neither they nor their successors and assigns would compete directly or indirectly in the sale or lease of certain one-piece devices in United States markets served by BluTag technology. This non-compete

2

agreement from OGPL and STI formed essential consideration for STOP's agreement to license the one-piece BluTag technology back to OGPL and STI.

5. Upon information and belief, on September 18, 2006, STI sold certain of its assets to Justice Services (Canada), including its shares of OGPL and its one-piece BluTag technology license. Justice Services (Canada) is itself a wholly-owned subsidiary of G4S, and G4S is a major competitor against STOP.

6. Upon information and belief, G4S has assumed control of the one-piece BluTag technology license, including its benefits, and has begun competing with STOP directly, or indirectly through subsidiaries, in the sale or lease of certain one-piece devices in United States markets served by BluTag technology.

7. STI's sale of assets to Justice Services (Canada), a wholly-owned subsidiary of a STOP competitor, breached the non-compete agreement by voluntarily disabling the ability of OGPL and STI to perform their agreement not to compete with STOP.

8. Upon information and belief, Justice Services (Canada) exercises control over the daily operations of OGPL, to the extent OGPL continues to have any business operations. Upon information and belief, Justice Services (Canada) conducts business through OGPL and OGPL exists solely to serve Justice Services (Canada).

9. Upon information and belief, G4S likewise wholly owns Justice Services (Canada) and exercises control over the daily operations of Justice Services (Canada). Upon information and belief, G4S conducts business through Justices Services (Canada) and Justice Services (Canada) exists solely to serve G4S.

10. Upon information and belief, G4S is using the corporate form of its various subsidiaries to work a fraud upon STOP to deprive it of its rights under the agreements, by purporting to isolate the agreement not to compete in one of its wholly-owned subsidiaries, while

3

at the same time reaping for itself, the benefits of the agreements by selling, leasing and sub-licensing the one-piece BluTag technology in foreign markets and directing others of its wholly-owned subsidiaries to directly compete against STOP within the United States in violation of the agreements.

11. OGPL and STI wrongfully conspired to deprive STOP of its substantial rights and interests under the agreements by, among other things, (a) inducing STOP to enter into the agreements despite their intention to not honor their agreement not to compete within the United States, (b) breaching the covenant of good faith and fair dealing by virtue of their selling their assets and rights and interests under the agreements to one of STOP's major competitors just one year into their ten-year agreement not to compete, (c) selling their assets, including their rights and interests under the agreements to Justice Services (Canada), a wholly-owned subsidiary of one of STOP's largest competitors, (d) deploying their assets and personnel throughout the G4S corporate family to aid G4S in directly competing against STOP and (e) voluntarily disabling their ability to perform their agreement not to compete when they agreed to be purchased by Justice Services (Canada) and to allow their assets, technology and personnel to be used in competition against STOP in the one-piece electronic monitoring equipment industry.

12. G4S and Justice Services (Canada) wrongfully conspired to deprive STOP of its substantial rights and interests under the agreements by, among other things, (a) tortiously interfering with those agreements when they purchased OGPL and STI despite the promise of OGPL and STI not to compete against STOP in the one-piece electronic monitoring equipment industry for ten years, thereby causing OGPL and STI to disable their performance under the Related Agreements, (b) benefiting from the agreements, but refusing to be bound by the commensurate obligations and restrictions in the agreements, and (c) subsequently utilizing the

4

647696

assets and personnel of STI and OGPL to compete directly, and indirectly through their subsidiaries and affiliates, against STOP, in violation of the agreements.

13. STOP seeks compensatory damages, specific performance of the August 5, 2005, agreements, and an order enjoining Defendants, and their subsidiaries and affiliates, from engaging directly or indirectly in any business involving the sale or lease of certain devices in United States markets served by BluTag technology, until August 5, 2015.

## THE PARTIES

14. Plaintiff STOP is a provider of GPS tracking systems and services to federal and state corrections and law enforcement agencies in the field of offender monitoring. STOP is a Delaware limited liability company that maintains a place of business at 1212 North Post Oak Road, Suite 100, Houston, Texas 77055.

15. Upon information and belief, Defendant G4S is a public limited liability company organized and existing under the laws of England and Wales that maintains a place of business at The Manor, Manor Royal, Crawley, West Sussex, England RH10 9UN.

16. Upon information and belief, Justice Services (Canada) is a wholly-owned subsidiary of G4S, organized and existing under the laws of Canada that purports to maintain a place of business at Suite 2600, Three Bentall Centre, P.O. Box 49314, 595 Burrand Street, Vancouver, British Columbia, Canada V7X1L3.

17. Upon information and belief, Defendant STI is incorporated under the laws of Canada that purports to maintain a place of business at Suite 103, 6592 - 172 Street, Surrey, British Columbia, Canada V3S 4G5.

18. Upon information and belief, Defendant OGPL is a wholly-owned subsidiary of Justices Services (Canada), organized and existing under the laws of England and Wales that

purports to maintain a place of business at 10 St. George Yard, Farnham, England GU9 7LW. Upon information and belief, OGPL is a wholly-owned subsidiary of Justice Services (Canada).

## JURISDICTION AND VENUE

19. The matter in controversy, exclusive of interest and costs, exceeds $75,000. Diversity exists and this Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

20. Personal jurisdiction and venue as to OGPL and STI are proper in any federal court located in Nashville, Tennessee, pursuant to the exclusive forum selection clauses in the August 5, 2005 agreements.

21. Personal jurisdiction and venue as to Justice Services (Canada) are proper in any federal court located in Nashville, Tennessee, pursuant to the exclusive forum selection clauses in the August 5, 2005 agreements. Justice Services (Canada) is bound by the agreements as a successor and assignee of STI and because Justice Services (Canada) is closely related to the dispute underlying this action.

22. Personal jurisdiction and venue as to G4S are proper in any federal court located in Nashville, Tennessee, pursuant to the exclusive forum selection clauses in the August 5, 2005 agreements. G4S is bound by the agreements as successor and assignee of STI and because G4S is closely related to the dispute underlying this action.

23. Therefore, venue is proper as to all of the defendants pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

I.  **The Agreement Between the Parties**

24. STOP is a provider of GPS tracking systems and services to corrections and law enforcement agencies wishing to take advantage of the most recent technological developments in the field of offender monitoring. STOP offers systems employing BluTag technology in one-piece tracking devices that house a receiver and transmitter in a single unit ("Tracking Units").

25. On August 5, 2005, STOP entered into an agreement with OGPL and STI, consisting of two related agreements, an Asset Purchase Agreement ("Purchase Agreement") and an Intellectual Property License and Supply Agreement ("License Agreement") (collectively, the "Related Agreements"). Under the Related Agreements, STOP purchased from OGPL and STI their right, title and interest in one-piece BluTag technology, and OGPL and STI licensed back from STOP rights to use the one-piece BluTag technology in certain foreign markets outside the United States.

26. OGPL and STI promised in the Purchase Agreement that neither they nor their successors or assigns, would "not engage directly or indirectly in any business involving the sale or lease of a one-piece Tracking Unit (i) for ten (10) years in the Field in the United States of America, (ii) through December 31, 2007 outside the Field in the United States of America, and (iii) through December 31, 2007 in any other geographical area where STOP or any of its Affiliates conducts or intends to conduct business directly or indirectly as of the Effective Date . . ." ("Covenant Not to Compete").

27. STOP, OGPL and STI negotiated the Covenant Not to Compete at length and agreed that fully one-third of the purchase price was attributable to the Covenant Not to Compete.

7

28. The Covenant Not to Compete was a material term of the Related Agreements, as STOP would not have purchased the one-piece BluTag technology nor licensed back the one-piece BluTag technology to OGPL and STI if OGPL and STI or their successors or assigns could compete directly or indirectly in the same market against STOP.

29. Both OGPL and STI understood that the Covenant Not to Compete was an essential and material promise of the Related Agreements.

## II. The Sale of OGPL and STI

30. On September 18, 2006, STI sold all of the shares of OGPL, as well as the license of one-piece BluTag technology, to G4S subsidiary, Justice Services (Canada), after which time G4S began benefiting from the agreements. Recently, however, STOP learned that G4S and its subsidiaries have begun competing against STOP in the sale or lease of one-piece Tracking Units in the United States. Upon information and belief, G4S and its subsidiaries are employing assets, consisting of technology and personnel of OGPL and STI to do so. Because OGPL and STI were small companies prior to the acquisition by G4S, it is significant that their personnel are now being employed by G4S and its subsidiaries to directly compete against STOP. Essentially, the personnel of OGPL and STI are now directly competing against STOP, but under a different corporate name

31. G4S and its subsidiaries are major competitors against STOP in the electronic monitoring equipment industry. G4S previously only marketed an outdated two-piece electronic monitoring device, but appears to have aquired the rights to and technology behind STOP's groundbreaking one-piece technology by purchasing the same through STI and OGPL, despite those entities' promise not to compete against STOP in the one-piece electronic monitoring device market inside the United States for ten years.

8

32. Upon information and belief, both Justice Services (Canada) and G4S had knowledge of the one-piece BluTag licensing rights held by OGPL and STI under the Related Agreements when they purchased OGPL and certain assets from STI.

33. Justice Services (Canada) and G4S became successors and assigns to the Related Agreements upon the purchase of certain assets of STI and all of the shares of OGPL and the assignment of the agreements to Justice Services (Canada). In addition, G4S has claimed the benefits of the Related Agreements and continues to benefit therefrom.

### III. Defendants' Breach of the Agreement and Competition With STOP

34. Upon information and belief, by and through its wholly-owned subsidiaries and affiliates, G4S has begun competing directly with STOP in the sale of one-piece Tracking Units within the United States, when they previously only competed with outdated two-piece equipment, in violation of the Covenant Not to Compete.

35. Upon information and belief, individuals that were previously employed by STI and OGPL were employed by G4S or its wholly-owned subsidiaries and affiliates immediately after the purchase of OGPL and certain assets of STI. STOP recently learned that G4S and its subsidiaries and affiliates have begun competing directly against STOP in the sale of one-piece Tracking Units within the United States in violation of the Covenant Not to Compete.

36. Upon information and belief, Justice Services (Canada) purports to have purchased and transferred to itself and to G4S the rights to the one-piece BluTag technology under the Related Agreements, but left behind the obligations contained in the Covenant Not to Compete when it purchased OGPL and certain assets of STI.

37. G4S has stepped into the shoes of OGPL and STI, as a licensee, by claiming and accepting benefits under the Related Agreements.

9

647696
Case 3:08-cv-00126 Document 1 Filed 02/07/08 Page 9 of 18 PageID #: 13

38. The Related Agreements required that OGPL and STI seek and obtain STOP's written consent before sub-licensing the one-piece BluTag technology in certain foreign markets. Subsequent to OGPL and STI's acquisition by Justice Services (Canada), G4S has claimed the benefits under the Related Agreements by seeking STOP's written consent to sub-license the one-piece BluTag technology in certain foreign markets.

39. Upon information and belief, G4S has been, and continues to, engage in selling and leasing one-piece Tracking Units in foreign markets outside the United States and is reaping financial reward under the Related Agreements that OGPL and STI entered into with STOP.

40. Therefore, G4S is a successor and assign under the Related Agreements and is bound by all of the terms thereof.

41. G4S is playing a corporate shell game, claiming that one of its wholly-owned subsidiaries purchased the sub-licensing rights under the Related Agreements while G4S itself claims the benefits from that purchase of rights and does not adhere to the obligations contained in the Covenant Not to Compete. As a part of G4S's corporate shell game, it further directs other of its wholly-owned subsidiaries to employ the former officers, managers or other employees of OGPL and STI to directly compete against STOP in the sale of one-piece Tracking Units within the United States.

42. The sale by OGPL and STI of their rights under the Related Agreements to one of STOP's major competitors, was an act of bad faith on the part of both OGPL and STI, particularly in view of G4S and its subsidiaries' subsequent use of the assets, consisting of technology and personnel of OGPL and STI, to compete against STOP in the sale or lease of one-piece Tracking Units in the United States,

43. Selling OGPL and STI's rights under the Related Agreements to Justice Services (Canada) was a breach of OGPL and STI's Covenant Not to Compete by disabling their performance under the Related Agreements.

44. To the extent the Related Agreements do not expressly prohibit OGPL and STI from selling their assets to another corporate entity, selling their assets (including their rights under the Related Agreements) to a major competitor in the electronic monitoring equipment market was an act of bad faith, a breach of the covenant of good faith and fair dealing by voluntarily disabling their ability to perform under the Covenant Not to Compete and the Related Agreements.

45. G4S and Justice Services (Canada)'s purchase of OGPL and STI and their subsequent use of the one-piece BluTag technology to compete against STOP in the sale and lease of Tracking Units in the United States constitutes tortious interference with the Related Agreements.

## IV. Relief Requested

46. Due to the unlawful conduct of Defendants, as discussed more fully above, STOP has been damaged and Defendants are liable to STOP for these damages in an amount to be determined at trial.

47. Because Defendants and their subsidiaries, parents, successors, assigns, and affiliates have begun violating, and will continue to violate, the Covenant Not to Compete by their continued competition against STOP within the United States, STOP is entitled to specific performance of the Covenant Not to Compete.

48. In addition, injunctive relief is necessary to prevent G4S and Justice Services (Canada) and any of their subsidiaries, parents, successors, assigns or affiliates from competing against STOP within the United States until August 5, 2015.

## COUNT ONE
### (Breach of Related Agreements)

49. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48 as if fully set forth herein at length.

50. STOP, OGPL and STI validly entered into and fully executed the Related Agreements on August 5, 2005.

51. As signatories to the Purchase Agreement, OGPL and STI promised not to compete directly or indirectly in any business involving the sale or lease of a one-piece Tracking Unit for ten years in the United States.

52. As a successor and assign to OGPL and STI under the Related Agreements, G4S likewise promised that it would not compete directly or indirectly in any business involving the sale or lease of one-piece Tracking Units for ten years in the United States.

53. STOP has performed its obligations under the Related Agreements.

54. Defendants' continuing direct and indirect competition with STOP through the sale and leasing of one-piece Tracking Units inside the United States constitutes a breach of their contractual promises to STOP.

55. As a result of Defendants' breach of their contractual promises, STOP has sustained damages in an amount to be determined at trial.

56. STOP does not have an adequate remedy at law.

## COUNT TWO
### (Unjust Enrichment)

57. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 56 as if fully set forth herein at length.

58. Defendants have been unjustly enriched to the detriment of STOP by their continuing unlawful competition with STOP within the United States.

59. STOP performed, and continues to perform, under the Related Agreements in good faith.

60. Defendants have accepted the benefits of STOP's performance under the Related Agreements.

61. STOP reasonably expected Defendants to perform their obligations under the Related Agreements.

62. As a result of Defendants' unjust enrichment, STOP has sustained damages in an amount to be determined at trial.

63. STOP does not have an adequate remedy at law.

## COUNT THREE
### (Tortious Interference)

64. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 as if fully set forth herein at length.

65. STOP, OGPL and STI validly entered into and fully executed the Related Agreements on August 5, 2005.

66. Upon information and belief, G4S and Justice Services (Canada) had knowledge of the Related Agreements at the time that Justice Services (Canada) purchased certain of STI's assets, including all of the shares of OGPL.

67. G4S and Justice Services (Canada) intentionally procured from OGPL and STI, their breach of the Related Agreements, by, among other things, inducing OGPL and STI to disable themselves from performing their obligations under the Related Agreements. OGPL and STI had agreed not to engage directly or indirectly in any business involving the sale or lease of a one-piece Tracking Unit within ten years of the Related Agreements in the United States. G4S and Justice Services (Canada) acquired from STI certain of STI's assets, including all of the

shares of OGPL and Justice Services (Canada) then used those assets, consisting of technology and personnel of OGPL and STI, to compete against STOP in the sale or lease of one-piece Tracking Units in the United States.

68. OGPL and STI have breached the Related Agreements by competing directly or indirectly in businesses involving the sale or lease of a one-piece Tracking Unit, within ten years of the Related Agreements, in the United States, by and through G4S, Justices Services (Canada) and their subsidiaries and affiliates.

69. As a result of tortious interference with the Related Agreements by G4S, Justices Services (Canada), and their subsidiaries and affiliates, STOP has sustained damages in an amount to be determined at trial.

70. STOP does not have an adequate remedy at law.

## COUNT FOUR
### (Breach of Covenant of Good Faith and Fair Dealing)

71. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 70 as if fully set forth herein at length.

72. STOP, OGPL and STI validly entered into and fully executed the Related Agreements on August 5, 2005.

73. OGPL and STI breached their obligation of good faith under the Covenant Not to Compete in the Purchase Agreement, depriving STOP of the right to receive the benefits under the Related Agreements by voluntarily disabling OGPL and STI's ability to perform their obligations under the Related Agreements.

74. OGPL and STI acted in bad faith, by selling assets, consisting of technology and personnel of OGPL and STI, to one of STOP's major competitors, to assist that major competitor in competing against STOP in the sale or lease of one-piece Tracking Units in the United States.

14

75. OGPL and STI committed their act of bad faith just one year into the ten year period in which they promised not to compete against STOP by voluntarily disabling their ability to perform their obligations under the Related Agreements.

76. As a result of Defendants' breach of the covenant of good faith and fair dealing, STOP has sustained damages to an amount to be determined at trial.

77. STOP does not have an adequate remedy at law.

## COUNT FIVE
### ((Fraud in the Inducement - Negligent and Reckless Misrepresentation)

78. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 77 as if fully set forth herein at length.

79. OGPL and STI induced STOP to enter into the Related Agreements by promising and representing that they would not compete directly or indirectly in any business involving the sale or lease of a one-piece Tracking Unit for ten years in the United States.

80. This promise and representation was material to the Related Agreements.

81. STOP reasonably relied on the promise and representation of OGPL and STI that they would not engage directly or indirectly in any business involving the sale or lease of a one-piece Tracking Unit for ten years in the United States.

82. Upon information and belief, OGPL and STI made the their promise and representation negligently or recklessly.

83. Because OGPL and STI had a business and professional relationship with STOP, and because OGPL and STI knew that STOP was relying on their promise and representation not to compete, OGPL and STI owed to STOP a duty to ensure that their promise and representation were be adhered to.

15

647696

84. As a result of OGPL and STI's negligent and reckless promise and representations, STOP has sustained damages in an amount to be determined at trial.

85. STOP does not have an adequate remedy at law.

## COUNT SIX
### (Civil Conspiracy)

86. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 as if fully set forth herein at length.

87. Upon information and belief, Defendants acted in concert and by agreement to engage in the unlawful conduct alleged above and to deprive STOP of its rights under the Related Agreements.

88. Upon information and belief, Defendants engaged, and intentionally participated, in the unlawful conduct described above as part of and in furtherance of their agreement, common scheme, plan and purpose to harm STOP and deprive it of its rights under the Related Agreements.

89. As a direct and proximate result of Defendants' unlawful conspiracy and conduct, STOP has sustained damages in an amount to be determined at trial.

90. STOP does not have an adequate remedy at law.

## COUNT SEVEN
### (Breach of Contract - Voluntary Disabling Performance)

91. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein at length.

92. As parties to the Related Agreements, OGPL and STI obligated themselves and their successors and assigns not to compete directly or indirectly in any business involving the sale or lease of a one-piece Tracking Unit for ten years in the United States.

16

93. As parties to the Related Agreements, OGPL and STI had a contractual duty not to voluntarily disable their ability to perform their obligations under the Related Agreements.

94. STOP has performed its obligations under the Related Agreements.

95. The decision of OGPL and STI to sell all of the shares of OGPL to Justice Services (Canada), a wholly-owned subsidiary of one of STOP's major competitors and the use of OGPL and STI assets, technology and personnel by Justice Services (Canada), G4S and their subsidiaries and affiliates to compete against STOP, was a voluntary disabling of the ability of OGPL and STI to perform and to fulfill their obligations under the Related Agreements.

96. As a result of Defendants' breach of their contractual obligations, STOP has sustained damages in an amount to be determined at trial.

97. STOP does not have an adequate remedy at law.

**WHEREFORE**, Plaintiff STOP respectfully requests that judgment be entered in its favor and against Defendants as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Specific performance of the Covenant Not to Compete, as to OGPL and STI;

C. Injunctive relief, ordering G4S and Justice Services (Canada) and all of their subsidiaries, parents, successors, assigns, and affiliates to not engage directly or indirectly in any business involving the sale or lease of a one-piece Tracking Unit for ten years in the United States.

D. Interest, costs, attorneys' fees and expenses; and

E. Such other and further relief as the Court may deem just and proper.

Dated: February 7, 2008
Nashville, Tennessee

                                              **BAKER, DONELSON, BEARMAN,**
                                              **CALDWELL & BERKOWITZ, PC**

*/s/ Lawrence C. Maxwell (by permission Joseph P. Smith)*
Lawrence C. Maxwell (BPR No. 4624)
211 Commerce Street
Nashville, Tennessee 37201
(615) 726-5600
lmaxwell@bakerdonelson.com

OF COUNSEL:
Thomas J. Vetter
Paul A. Saso
GIBBONS P.C.
One Pennsylvania Plaza, 37th Floor
New York, New York 10119
(212) 613-2000

*Attorneys for Plaintiff Satellite Tracking of People LLC*

18

647696