IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SATELLITE TRACKING OF PEOPLE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-cv-0126 |
| ) | Judge Trauger |
| G4S PLC, ) | |
| G4S JUSTICE SERVICES (CANADA) INC., ) | |
| STRATEGIC TECHNOLOGIES, INC., ) | |
| and G4S EM INTERNATIONAL LIMITED, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is Satellite Tracking of People, LLC's motion to dismiss the counterclaim filed by G4S EM International Limited (Docket No. 99), to which G4S EM International Limited has responded (Docket No. 105), and Satellite Tracking of People, LLC has replied (Docket No. 112). In connection with its response, G4S EM International Limited requested that the court take judicial notice of the Declaration of Steve Logan and exhibits thereto, which were previously filed by Satellite Tracking of People, LLC in the course of this litigation. (Docket No. 106.) For the reasons discussed herein, the court will take judicial notice of the Logan Declaration and its exhibits and will deny the motion to dismiss the counterclaim.

## BACKGROUND

Satellite Tracking of People, LLC ("STOP"), the plaintiff in this case and the counterclaim defendant for the purposes of the instant motion, manufactures and sells tracking

1

systems and services to federal and state corrections and law enforcement agencies in the field of offender monitoring.[1]

STOP initially brought suit against four defendants, including G4S PLC, its subsidiary G4S Justice Services (Canada) Inc., Strategic Technologies, Inc. ("STI"), and an entity named in the caption as G4S EM International Limited and formerly known as On Guard Plus Limited ("EMI/OGPL"). At one point, EMI/OGPL was a wholly-owned subsidiary of STI, but it has since been sold by STI and is now a wholly-owned subsidiary of G4S Justice Services (Canada) Inc. In addition to the claims asserted by STOP against the four defendants, EMI/OGPL has asserted a counterclaim against STOP, which is the subject of the instant motion to dismiss.

On August 5, 2005, STOP, STI, and EMI/OGPL entered into an Intellectual Property License and Supply Agreement (the "License Agreement"). Pursuant to the License Agreement, STI and EMI/OGPL licensed from STOP the right to use electronic monitoring devices in certain territories outside the United States, and STOP agreed to supply STI and EMI/OGPL with those devices. (*See* Docket No. 91 Ex. A.) In its counterclaim, filed by leave of this court, EMI/OGPL asserts that STOP refused to supply EMI/OGPL with the devices pursuant to the License Agreement and alleges claims of breach of contract or, in the alternative, breach of a valid and enforceable oral agreement between the parties, and promissory estoppel.

---

[1]Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1) and G4S EM International Limited's Counterclaim (Docket No. 91).

**ANALYSIS**

STOP has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss EMI/OGPL's counterclaim, asserting that EMI/OGPL has not stated any claims upon which relief may be granted.

**I.      Motion to Dismiss Standard**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65.

"The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly*, 127 S.Ct. at 1965 n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely").

In *Ashcroft v. Iqbal*, ---- S. Ct. ----, 2009 WL 1361536 (May 18, 2009), the Court further expounded on the "two working principles" that underlie the *Twombly* decision. *Id.* at *13. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice" to a state a claim under the federal rules.  *Id.*  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*  To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Further, the Court explained that determining "facial plausibility" is a "context-specific task" in which the reviewing court must "draw on its judicial experience and common sense."  *Id.*  Where, using this background, the court finds that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. Rule Civ. Proc. 8(a)(2)).  The Court noted that "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  With this standard and guidance in mind, the court turns to an analysis of EMI/OGPL's counterclaims.

## II.  Breach of Contract Claim

Pursuant to the terms of the License Agreement, STOP granted EMI/OGPL a license to use electronic monitoring devices in certain territories outside the United States—specifically, in Canada, the United Kingdom, France, Switzerland, Italy, Austria, and Sweden—and STOP agreed to provide EMI/OGPL with those devices.  (*See* Docket No. 91 Ex. A.)  In its

5

counterclaim, EMI/OGPL asserts that STOP breached the License Agreement by refusing to supply EMI/OGPL with electronic monitoring devices for use in the Netherlands. (Docket No. 91 ¶¶ 6-12.) EMI/OGPL argues that, although the Netherlands is not among the territories for which STOP expressly granted EMI/OGPL a license in the License Agreement, the parties subsequently modified the License Agreement to provide EMI/OGPL with a license to use electronic monitoring devices in the Netherlands.

In support of its motion to dismiss, STOP notes that the License Agreement contains an integration clause, which provides, in relevant part:

> This Agreement sets forth the entire agreement and understanding between STOP, STI and OGPL as to the subject matter hereof, and supersedes all prior agreements, recitations and representations. . . . This Agreement may not be modified or any provisions contained herein waived except by a writing executed subsequent to the execution of this Agreement that is signed by the parties.

(Docket No. 91 Ex. A § XVIII.) STOP argues that this clause effectively bars EMI/OGPL's breach of contract claim. (Docket No. 100 at 2-3.)

STOP first points to the parol evidence rule, a rule of substantive law under which "the clear and unambiguous terms of a valid integrated written instrument cannot be contradicted or varied by prior or contemporaneous extrinsic oral or written evidence."[2] *Happy Dack Trading Co. v. Agro-Indus., Inc.*, 602 F. Supp. 986, 991 (S.D.N.Y. 1984); *see also Holloway v. King*, 361 F. Supp. 2d 351, 358 (S.D.N.Y. 2005) ("Parol evidence to vary, contradict, or supplement the terms of a fully integrated agreement is not admissible. Absent an allegation of fraud, the presence of an integration or merger clause triggers the parol evidence rule in New York.").

---

[2]The License Agreement provides that it "shall be construed under and governed by the Laws of the State of New York applicable to contracts made and to be performed therein." (Docket No. 91 Ex. A § XV.)

6

However, the parol evidence rule applies to prior or contemporaneous evidence contradicting the terms of an agreement; here, EMI/OGPL has not argued that prior or contemporaneous evidence contradicts the terms of the License Agreement but, rather, has argued that the agreement was modified subsequent to its execution.

The question, therefore, is not whether the parol evidence rule bars EMI/OGPL's breach of contract claim but, rather, whether EMI/OGPL has alleged that the License Agreement was modified to include the Netherlands among the territories for which EMI/OGPL was granted a license to use electronic monitoring devices provided by STOP. To that extent, it is the second portion of the License Agreement's integration clause, which provides that the agreement may not be modified except by a writing, that is relevant here.

As a general matter of New York law, a contract that contains a provision stating that it cannot be modified orally may not be modified by executory agreement unless that agreement is in writing. N.Y. Gen. Oblig. Law § 15-301. However, "[a]lthough 'no oral modification' clauses are entitled to great deference, they are not impervious." *Gerard v. Cahill*, No. 26224-05, 2008 N.Y. Slip Op. 51716U, at *5 (N.Y. Sup. Ct. July 16, 2008). A contract that contains a "no oral modification" clause may be considered modified, even in the absence of an executed writing, given full performance of an oral modification, which constitutes a waiver of the no oral modification clause. *Id.* Such a contract may also be considered modified, given partial performance of an oral modification that is "unequivocally referable to an oral modification assented to by both parties." *Id.*; *see also Rose v. Spa Realty Assocs.*, 366 N.E.2d 1279, 1281 (N.Y. 1977). Finally, a contract prohibiting oral modification may nevertheless be treated as modified under the doctrine of equitable estoppel and, thus, "[w]hen a party's conduct induces

7

another's significant and substantial reliance on the agreement to modify, albeit oral, that party may be estopped from disputing the modification notwithstanding [Section 15-301 of the General Obligations Law]." *Rose*, 366 N.E. 2d at 1281; *see also Gerard*, 2008 N.Y. Slip Op. 51716U, at *5.

Here, STOP correctly notes that EMI/OGPL has not pointed to any writing executed by the parties that modifies the License Agreement, and there is no allegation of full or partial performance to defeat the License Agreement's "nor oral modification" clause. However, EMI/OGPL relies on the Declaration of Steve Logan, STOP's Chief Executive Officer, previously filed in connection with this case, as well as two email chains that were attached as exhibits to the Logan Declaration, as evidence that the License Agreement had been orally modified to include the Netherlands.[3] Mr. Logan's declaration includes the following paragraph:

> Robert Thomas (an employee of [G4S Justice Services, Inc.] and former employee of OGPL both prior to and after the STI transfer) recently contacted me seeking approval of a purchase order pursuant to the [License Agreement] to supply electronic monitoring device straps in the Netherlands.

(Docket No. 106-1 ¶ 11.) Additionally, on January 4, 2007, Mr. Logan received an email from Mark Griffiths, a representative of EMI/OGPL, stating, "We need to order some consumables for training in the Netherlands. . . . Please confirm this is OK . . . ." (Docket No. 106-1 Ex. D.) In a subsequent email, dated January 16, 2007, Mr. Griffiths asked Mr. Logan to "[p]lease . . . send

---

[3]The court takes judicial notice of the Logan Declaration and its exhibits, as requested by EMI/OGPL. (Docket No. 106.) Judicial notice is appropriate where an adjudicative fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, judicial notice is mandatory where a party requests the court take judicial notice and provides the court with the information required to do so. Fed. R. Evid. 201(d).

us the strap parts we ordered 2 weeks ago. These are for training in The Netherlands which is already underway. This contract is through our G4S company and no-one has suggested there will be any difficulties getting the NDAs signed in this case." (*Id.*) Finally, on July 10, 2008, Mr. Griffiths emailed a number of individuals, including Mr. Logan, stating, "The straps are for the ongoing but scaled down pilot in the Netherlands . . . . Royalties are due to STOP for both the Austrian pilot and the [Netherlands] pilot." (*Id.*) Also on July 10, 2008, Mr. Logan received an email from Mr. Thomas, requesting that Mr. Logan "[p]lease accept this purchase order for straps" for use in the Netherlands. (Docket No. 106-1 Ex. B.)

In its counterclaim, EMI/OGPL alleges that, in the course of the parties' business relationship, STOP promised to grant EMI/OGPL a license to use electronic monitoring devices in the Netherlands and to supply EMI/OGPL with devices for that purpose. Further, the emails and Mr. Logan's statement in his declaration demonstrate that there exists, at the least, a factual question as to whether STOP's conduct induced EMI/OGPL's reliance on an oral agreement to modify the License Agreement to include the Netherlands and whether STOP should, therefore, be estopped from relying on the provision of the License Agreement prohibiting oral modification of that agreement. Although STOP argues that the Logan Declaration and exhibited emails reflect only EMI/OGPL's request for modification and do not reflect STOP's assent to that proposed modification, EMI/OGPL has stated a claim sufficient to survive a motion to dismiss and to entitle it to pursue discovery of evidence that would further support its allegation that STOP induced EMI/OGPL's reliance on an oral modification of the License Agreement. Similarly, although STOP correctly notes that "mere proof of oral modifications is insufficient to establish estoppel" and that EMI/OGPL will be required to prove that it relied on

9

STOP's conduct to its detriment to prevail on this claim, *see The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.*, 413 F. Supp. 555, 559 (S.D.N.Y. 1976), EMI/OGPL has stated a claim that survives at the motion to dismiss stage.

Therefore, STOP's motion to dismiss EMI/OGPL's breach of contract claim will be denied.

### III. Breach of Oral Contract Claim

EMI/OGPL asserts, in the alternative to its breach of contract claim, that STOP breached an oral contract to license EMI/OGPL to use electronic monitoring devices in the Netherlands and to supply EMI/OGPL with devices for that purpose. (Docket No. 91 ¶¶ 6-7, 13-16.) STOP argues that this claim must be dismissed because it is barred by the statute of frauds. (Docket No. 100 at 4.)

The Uniform Commercial Code, as adopted by the state of New York, provides that a contract for the sale of goods worth $500 or more is not enforceable unless made in writing. N.Y. U.C.C. Law § 2-201(1). However, a contract need not be in writing "if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents." N.Y. U.C.C. Law § 2-201(2). In addition, a contract need not be in writing "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale is made . . . ." N.Y. U.C.C. Law § 2-201(3)(b).

EMI/OGPL argues that the Logan Declaration and the emails between Mr. Logan and representatives of EMI/OGPL establish both contemporaneous confirmation of an oral contract between the parties under § 2-201(2) and an admission in court that an oral contract existed

10

under § 2-201(3)(b). EMI/OGPL thus argues that both of these exceptions to the statute of frauds apply. First, the court cannot accept the argument that the Logan Declaration constitutes an admission in court that an oral contract existed. In that Declaration, the most that Mr. Logan admitted was that an EMI/OGPL representative had contacted him about contracting to license devices for use in the Netherlands and, therefore, the Declaration does not constitute an admission that an oral contract, in fact, existed. As such, the exception under § 2-201(3)(b) does not apply here. However, for the reasons discussed *supra*, the emails between Mr. Logan and representatives of EMI/OGPL establish that there exists a question of fact, at the least, as to whether STOP confirmed the existence of an oral contract to license EMI/OGPL to use electronic monitoring devices in the Netherlands and to provide EMI/OGPL with those devices. In that case, the statute of frauds would not bar EMI/OGPL's claim that an oral contract was breached pursuant to the exception under § 2-201(2).[4]

Thus, STOP's motion to dismiss the alternative claim for breach of an oral contract will be denied.

## IV. Promissory Estoppel Claim

Finally, EMI/OGPL has asserted a claim of promissory estoppel (Docket No. 91 ¶¶17-20), which STOP has moved to dismiss (Docket No. 100 at 4-6).

---

[4] It is worth noting briefly that EMI/OGPL suggests that the Uniform Commercial Code may not apply to the alleged licensing agreement relating to the Netherlands. (Docket No. 105 at 9-10; *see also* Docket No. 112 at 4-5.) In any event, however, the statute of frauds applicable to agreements not governed by the Uniform Commercial Code contains a parallel exception, where there is confirmation that an oral contract existed. *See* N.Y. Gen. Oblig. Law § 5-701(3)(b). Therefore, regardless of whether the contract is governed by the statute of frauds contained in the Uniform Commercial Code or the General Obligations Law, the same exception applies.

11

STOP first argues that EMI/OGPL's promissory estoppel claim must be dismissed because it is merely duplicative of the breach of contract claim. Under New York law, "the existence of a 'valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events rising out of the same subject matter.'" *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 67 F. Supp. 2d 189, 206 (S.D.N.Y. 1999) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)). Therefore, a plaintiff may not recover on a claim of promissory estoppel "where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." *Clark-Fitzpatrick*, 516 N.E.2d at 193. However, where there is "a bona fide dispute as to the existence of a contract," or where "the contract does not cover the dispute in issue," a plaintiff may allege both a breach of contract claim and a quasi contract promissory estoppel claim. *Zuccarini v. Ziff-Davis Media, Inc.*, 762 N.Y.S.2d 621, 622 (N.Y. App. Div. 2003).

Here, the License Agreement did not provide EMI/OGPL with a license to use electronic monitoring devices in the Netherlands. EMI/OGPL claims that the License Agreement was modified to include the Netherlands, that the parties had a separate oral contract regarding the Netherlands, or that, in the absence of such modification or oral contract, STOP made a promise regarding the Netherlands on which EMI/OGPL relied to its detriment. Therefore, the License Agreement, as executed, does not cover the dispute regarding a license for the Netherlands. Moreover, there is a bona fide dispute between the parties as to whether a modification or separate oral contract exists—a point made crystal clear by STOP's arguments in support of its motion to dismiss those claims. As a result, it is perfectly acceptable for EMI/OGPL to assert an

12

alternative claim of promissory estoppel, and the claim will not, therefore, be dismissed on the grounds that it is duplicative of the breach of contract claim.

STOP further argues that EMI/OGPL must demonstrate a legal duty independent of the contract to establish its promissory estoppel claim. However, the cases on which STOP relies in support of this proposition are based on a misreading of the ruling of the New York Court of Appeals in *Clark-Fitzpatrick*. In that case, the court discussed the nature of quasi contract claims, stating that "[a] quasi contract only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." *Clark-Fitzpatrick*, 516 N.E.2d at 193. The court further noted that, although quasi contracts are not contracts by definition, "they give rise to obligations more akin to those stemming from contract than from tort." *Id.* With respect to the plaintiff's quasi contract claims, the court held that it was undisputed that a written agreement between the parties existed and that the plaintiff's choice to complete performance of the contract and sue for breach of contract precluded the plaintiff from pursuing a claim in quasi contract. *Id.* Then, in a separate ruling regarding the plaintiff's negligence claims, the court held that those claims were barred because "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Id.* Subsequently, some lower New York state courts, as well as STOP, have cited this language from *Clark-Fitzgerald* in support of the proposition that a promissory estoppel claim requires the existence of a duty independent of the contract, ignoring the fact that this aspect of the *Clark-Fitzgerald* ruling clearly pertains to negligence claims and not to claims sounding in quasi contract, such as the promissory estoppel claim asserted by EMI/OGPL in this case.

13

Finally, STOP argues that EMI/OGPL has not sufficiently pleaded the elements of a promissory estoppel claim. To establish such a claim, a plaintiff just demonstrate "a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made and an injury sustained in reliance on that promise." *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 867 N.Y.S.2d 169, 180 (N.Y. App. Div. 2008) (citing *Williams v. Eason*, 854 N.Y.S.2d 477, 479 (N.Y. App. Div. 2008)). Further, to recover on a claim of promissory estoppel, the plaintiff must have suffered "unconscionable injury." *Halliwell v. Gordon*, 878 N.Y.S.2d 137, 139 (N.Y. App. Div. 2009). In its counterclaim, EMI/OGPL asserts that STOP "promised in the course of the parties' business relationship to supply EMI with electronic monitoring devices for a pilot program in the Netherlands and other areas and to grant a license for the use of electronic monitoring devices in these territories," that "EMI relied on STOP's promise," and that "STOP failed to supply EMI with the necessary electronic monitoring devices and/or parts for same despite its promise to do so for the Netherlands and other areas . . . ." (Docket No. 91 ¶¶ 6-7.) EMI/OGPL further alleges that, as a result of STOP's actions, it "suffered a substantial detriment, which was foreseeable to STOP." (Docket No. 91 ¶ 20.)

STOP's argument that EMI/OGPL has failed to allege a clear and unambiguous promise fails, as the counterclaim makes clear that the promissory estoppel claim is based on an alleged promise by STOP to license EMI/OGPL to use electronic monitoring devices in the Netherlands and to supply EMI/OGPL with devices for that purpose. Likewise, STOP's argument that EMI/OGPL failed to allege reliance fails because, not only does the counterclaim allege reliance explicitly, but also the emails sent to Mr. Logan reflect EMI/OGPL's reliance to the extent that it was proceeding with the project in the Netherlands. Moreover, although STOP argues that reliance on a promise is not reasonable where the promise contradicts the terms of a written

14

agreement, such is not the case here. Rather, the promise alleged by EMI/OGPL does not contradict the terms of the License Agreement but merely expands the terms of the License Agreement to include the Netherlands. Finally, EMI/OGPL has alleged that it suffered a substantial detriment as a result of its reliance on STOP's alleged promise. Although the question is a relatively close one, because EMI/OGPL has provided relatively little in the way of factual allegations to support its allegation that it was injured as a result of STOP's actions, drawing all inferences in favor of EMI/OGPL, the court concludes that EMI/OGPL has alleged injury sufficient to state a claim of promissory estoppel.

Therefore, STOP's motion to dismiss this claim will be denied.

## CONCLUSION

For the reasons discussed herein, STOP's motion to dismiss the counterclaim of defendant EMI/OGPL will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

15